# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ALDO RAMIREZ,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,[1]

Defendant.

_______________________________________/

Case No. 2:25-cv-01885-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I. INTRODUCTION

Plaintiff Aldo Ramirez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. FACTUAL BACKGROUND

Plaintiff protectively filed claims for DIB and SSI payments on November 24, 2021, alleging

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 6.) On September 3, 2026, this case was reassigned to the undersigned. (*See* Doc. 21.)

he became disabled on June 1, 2018, due to depression, low back pain, leg pain, and headaches. (Administrative Record ("AR") 17, 71, 92, 115, 149, 185, 271–80, 306, 310, 361, 390.) Plaintiff was born in 1970, was 47 years old on the alleged disability onset date, and has at least a high school education. (AR 33, 45, 70, 91, 114, 148, 311.)

**A. Relevant Evidence of Record[3]**

**1. Medical Evidence**

In April 2013, Plaintiff underwent a "comprehensive evaluation of cognitive and emotional functioning after sustaining a concussion in a motor vehicle accident and presenting with cognitive deficits." (AR 1794–1806.) He reported he is a "stay-home dad" and takes care of his daughter. (AR 1797.) Plaintiff's Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) testing showed his Verbal Comprehension Index (VCI) was 85, his Perceptual Reasoning Index (PRI) was 81, his Working Memory Index (WMI) was 77, his Processing Speed Index (PSI) was 79, and his Full-Scale IQ (FSIQ) was 77. (AR 1798–99.) The evaluator noted Plaintiff's "overall intellectual ability tested in the mild deficit range" and assessed him with a "cognitive disorder, not otherwise specified." (AR 1804–1805.) Plaintiff's "cognitive deficits" were deemed "significant enough" to warrant referral for "cognitive rehabilitation" to improve his memory, attention, and word-finding ability, and he was encouraged to reduce his alcohol consumption. (AR 1805.)

In May 2018, Plaintiff complained of incontinence, gastroesophageal reflux disease (GERD), diarrhea, and stress. (AR 483–86.) A depression screening indicated that major depressive order was "unlikely" or "in remission." (AR 484.) That same month, Plaintiff complained of intermittent lower back and hip pain following a lumbar laminectomy in 1998. (AR 465–69.) He reported participating in physical therapy and was advised to consider chiropractic treatment or an evaluation by a spine specialist for persistent pain. (AR 468.)

Plaintiff complained of lumbar pain in June 2019. (AR 560–63.) He reported that he received a transforaminal epidural steroid injection with "excellent improvements." (AR 560.) On physical examination, Plaintiff had non-antalgic gait, mild spasm, some restricted range of motion,

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

5/5 strength, and intact sensation. (AR 561–62.)

In April 2020, Plaintiff was admitted to the hospital on a psychiatric hold for being a danger to himself. (AR 597–617.) He reported worsening depression since caring for his ill father and suicidal ideation. (AR 597, 604.) Plaintiff told the providers he treated his depression with alcohol. (AR 597, 605.) During hospitalization, he was cooperative with medication treatment, to which he responded well, and attended individual intervention. (AR 600–601.) He was able to perform his activities of daily living independently. (AR 601.) On discharge, Plaintiff was prescribed psychotropic medications and assessed with "major depressive disorder, recurrent, severe, without psychotic features"; "anxiety disorder, not otherwise specified"; and "alcohol use disorder, severe." (AR 601–602.)

Plaintiff presented to the emergency department following a verbal altercation and suicidal ideations in May 2020. (AR 623–59.) On admission, Plaintiff was alert, in no acute distress, cooperative, and displayed an appropriate mood and affect. (AR 624.) Plaintiff reported he had been drinking a lot of alcohol but wanted to stop and acknowledged he had not been taking his psychotropic medications for approximately one week. (AR 628–29.) His personal hygiene was fair, his speech was regular, his eye contact was fair, he described his mood as "I'm doing okay. I've got some depression" and his affect was mood congruent. (AR 628.) His intelligence was estimated to be average. (AR 628.) Plaintiff's attention and concentration were noted as "limited to fair," and he had fair impulse control, insight, and judgment. (AR 628.) He was advised to continue taking his psychotropic medications. (AR 628.) That same month, Plaintiff complained of worsening lower back pain. (AR 728–32.) On examination, Plaintiff had decreased sensation, positive straight leg raising test, some tenderness in the lumbar spine, and normal motor strength. (AR 730–31.)

In August 2020, Plaintiff's major depressive disorder was deemed "stable," in view of Plaintiff's report that he was "doing much better" on medication. (AR 940.) At a follow-up appointment for treatment of depression in October 2020, Plaintiff was noted to have an "improvement of initial symptoms" and "remain[ed] overall stable." (AR 984–85.) He reported staying sober and receiving a housing voucher. (AR 985.)

Plaintiff reported to his cardiologist that he walks daily without difficulty in November and

December 2020. (AR 697, 711.) His EKG and stress tests were normal. (AR 698, 712–713.) At a neurology consultation in December 2020, Plaintiff's physical examination was normal, with normal reflexes, sensation, and muscle strength. (AR 767–68.)

In January 2021, Plaintiff presented with appropriate mood and affect. (AR 1014.) Plaintiff reported using alcohol to treat his anxiety and was not taking some of his prescribed psychotropic medications in March 2021. (AR 990–91.)

That same month, Plaintiff presented for a comprehensive psychological evaluation by Dr. M. Jakubowski, Psy.D. (AR 743–50.) He complained of both short and long-term memory loss. (AR 743.) Plaintiff reported he was last employed in 2019 as a custodian in a warehouse, where he worked for four years. (AR 744.) He denied having limitations with daily self-care, shopping, preparing meals, and doing light household chores, and denied any problems with coworkers or customers. (AR 744.) Dr. Jakubowski noted that during the evaluation, Plaintiff "presented in a sometimes cooperative and sometimes resistant, and sometimes argumentative manner." (AR 744.) Plaintiff's mental status examination showed that he was alert and oriented, with normal speech; intact sensory functioning; good mood; full affect; adequate attention, concentration, fund of knowledge, memory, insight, and judgment; linear thought process; and normal thought content. (AR 744–45.) Plaintiff's ability for abstraction was impaired, and on WAIS-IV testing, his VCI was 50, his PRI was 50, his WMI was 50, his PSI was 50, and his FSIQ was 41. (AR 745–48.) Dr. Jakubowski raised a concern about "full effort being given" and observed that Plaintiff's "efforts or of not knowing did not appear genuine" due to "suspected malingering." (AR 749.) As for the cognitive testing, Dr. Jakubowski noted that the results "are considered to be a poor representation of [Plaintiff's] psychological functioning." (AR 745.) She further noted that the test scores "may be grossly underestimated due to lack of effort" and "should be interpreted with caution, as [Plaintiff] appeared to be feigning deficits in memory and learning." (AR 745, 749.)

In June 2021, Plaintiff received treatment for his assessed "major depressive disorder, recurrent, moderate," which was deemed "overall stable and appropriate for outpatient care." (AR 1038–42.) He reported an improvement in his initial symptoms and no difficulty functioning. (AR 1039.) A mental status examination was normal. (AR 1042.)

At a follow-up appointment in February 2022, Plaintiff reported still having depressive symptoms and agreed to a referral to behavioral health services. (AR 1155, 1168.) His physical examination showed mild tenderness along his thoracic spine, limited range of motion, positive straight leg test, normal strength, moderate tenderness in his epigastric area, and depressed mood. (AR 1158.) In February 2023, Plaintiff reported that he was still consuming alcohol and the provider noted that he appeared "slightly" intoxicated during the physical examination. (AR 1672–76.)

In March 2023, Plaintiff presented to Dr. Megan M. Harris for another comprehensive psychological evaluation. (AR 1658–64.) He again reported having no significant limitations with daily self-care or difficulties with shopping, independent living, household chores, and preparing meals. (AR 1659.) Dr. Harris noted that Plaintiff "presented in an obnoxious manner" and that he was "extremely rude and made inappropriate comments during the testing part of the evaluation." (AR 1659.) His mental status examination showed that he was alert and oriented, with normal speech; intact sensory functioning; mood "like anxiety"; full affect; fair attention, concentration, fund of knowledge, and memory; intact insight and judgment; linear thought process; and unremarkable thought content. (AR 1659–60.) On WAIS-IV testing, Plaintiff's VCI was 63, his PRI was 73, his WMI was 66, his PSI was 59, and his FSIQ was 60. (AR 1660–61.) Once again, the test results were noted to be a "poor representation of [Plaintiff's] psychological functioning" and "may be grossly underestimated due to lack of effort." (AR 1660, 1663.) Dr. Harris wrote that the scores "should be interpreted with caution," as [Plaintiff] "appeared to be feigning deficits in memory and learning." (AR 1660, 1663.)

That same month, Plaintiff presented for a comprehensive internal medicine evaluation with Deepthi Surineni, M.D. (AR 1665–70.) He complained of daily chronic back pain, mainly in his lower back. (AR 1665.) Plaintiff reported he last worked from 2014 to 2018 as a warehouse custodian. (AR 1666.) Dr. Surineni noted that Plaintiff did not need any assistance with enumerated activities of daily living, including managing medications, using the phone, and managing finances. (AR 1666.) On examination, Plaintiff ambulated without a cane or assistive device and was able to get on the examination table without assistance. (AR 1667.) His stance appeared normal, he was able to tandem walk with a "wobbly/unsteady gait," and no limping or leg preference was observed.

(AR 1167.) Plaintiff's Romberg sign was negative, and no pronator drift was noted. (AR 1667.) He had normal sensation and no muscle atrophy was documented. (AR 1667.) Plaintiff's lumbar spine range of motion was reduced, and his cervical spine range of motion was within normal limits. (AR 1667.) There were no significant deformities or tenderness in Plaintiff's cervical and thoracic spine. (AR 1668.) Plaintiff had paravertebral muscle tenderness in his lumbar spine with a positive straight leg raising test. (AR 1668.) His hip, knees, and ankle strength were 4/5 bilaterally, with no swelling or tenderness were noted, and range of motion was within normal limits. (AR 1668.)

In May 2023, Plaintiff reported that while he still had hernia pain, it had improved. (AR 1679.) His physical examination was normal. (AR 1681.)

**2. Opinion Evidence**

Following a consultative examination in March 2023, Dr. Surineni opined that Plaintiff could stand and/or walk for up to two hours per day, sit for up to six hours per day, lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and never climb, balance, stoop/squat, kneel, crouch, or crawl. (AR 1669.) Dr. Surineni further found Plaintiff had no limitations in his ability to reach, handle, finger, or feel, and should limit exposure to heights, heavy machinery, and excessive noise. (AR 1669–70.)

**3. Plaintiff's Statements**

In December 2021, Plaintiff completed an adult function report. (AR 331–38.) He alleged that it took him a while to dress, and that he often fell in the shower. (AR 332.) He was able to prepare simple meals, do laundry, wash dishes, go out alone, shop, and count change. (AR 333–34.) He stated that he was unable to drive and did not pay bills. (AR 334.) According to Plaintiff, he could lift about 10 pounds and walk 50 yards. (AR 336.) He used a cane while walking, and a back brace all the time. (AR 337.)

Plaintiff completed another adult function report in February 2023. (AR 366–73.) He reported living with roommates, and that he performed personal care "very carefully." (AR 367.) He remained able to make simple meals, go out alone and use public transit. (AR 368, 369.) His friends and family shopped for him. (AR 369.) According to Plaintiff, he could walk to the gas station and back. (AR 371.) He continued to use a cane, brace and splint, which were "suggested"

for him to use, and did not drive. (AR 369, 372.) He reported difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair-climbing, seeing, with memory, completing tasks, concentrating, understanding, following instructions, and using hands. (AR 371.) He reported that he had never been fired or laid off from a job because of problems getting along with other people and that he handles stress "very well." (AR 371–72.)

### 4. Third-Party Statements

Plaintiff's housemate Kieron Strawn completed a third-party adult function report in December 2021. (AR 319–26.) Mr. Strawn reported he is Plaintiff's housemate and friend, and they have known each other for eight months. (AR 319.) Mr. Strawn reported Plaintiff had no problem maintaining his personal care and that he cooked, mowed the lawn, swept, mopped, and did the dishes. (AR 320–21.) Mr. Strawn reported Plaintiff has difficulty lifting, squatting, bending, reaching, sitting, kneeling, seeing, and using his hands. (AR 324.) He reported Plaintiff needs a cane when walking, and that Plaintiff could walk for a mile before needing to stop and rest for a few minutes. (AR 324, 325.)

A third-party adult function report was also completed in February 2023 by Nathan Robert Harris. (AR 374–81.) Mr. Harris reported he is Plaintiff's roommate and they have known each other for two years. (AR 374.) Mr. Harris reported Plaintiff needs assistance in maintaining his personal care. (AR 375.) According to Mr. Harris, Plaintiff is in "constant pain" and has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, with his memory, completing tasks, concentrating, understanding, following instructions, and using his hands. (AR 377, 379.) Mr. Harris did not indicate that Plaintiff used a cane or assistive device. (AR 380.)

## B. Administrative Proceedings

The Commissioner denied Plaintiff's applications for benefits initially on March 1, 2022 (AR 17, 184–89), and again on reconsideration on May 11, 2023 (AR 17, 197–204). Consequently, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 205–38.) At the hearing on March 19, 2024, Plaintiff appeared with counsel and testified before an ALJ as to his work history and alleged disabling conditions. (AR 45–63.) A Vocational Expert (VE) also testified

at the hearing. (AR 63–67.)

**1. Plaintiff's Testimony**

At the hearing, Plaintiff testified that he underwent surgery and received injections as treatment for his back pain. (AR 47, 48.) The injections helped for one month before the pain returned. (AR 48.) Plaintiff testified that physical therapy made his condition worse. (AR 49.) He also testified his back pain has worsened over time, and the pain goes from his neck to this back around to the hips and down into his legs with numbness and tingling. (AR 49.) Plaintiff testified that his neck pain radiates into his left shoulder, and he has numbness and tingling in both arms. (AR 49–50, 54.) He testified that his foot and ankle continue to cause pain and swelling, and he uses ice packs and elevates his feet daily for one hour at midday. (AR 55, 56, 57, 58.) Plaintiff testified that he has a history of falls and has used a cane since 1998, but only inside his house. (AR 51–52.) His last fall was a year ago. (AR 50.) Plaintiff testified he does not take any pain medication. (AR 51.) He testified his sleep is disturbed by pain. (AR 53.)

Plaintiff testified that he was not sure how long he could stand before needing a break. (AR 51.) He has difficulty sitting for long periods of time, testifying that he must stand up periodically. (AR 52.) Plaintiff was not sure how much he could lift and carry. (AR 54.) He testified that he spends time with friends during the day, and they cook, shop, and clean for him. (AR 53, 54, 55.)

Plaintiff testified he has had four hernia repairs in the past and still has some issues in the abdominal region. (AR 56.) His cirrhosis is getting better and he is not drinking as much alcohol. (AR 56–57.) According to Plaintiff, he could not recall seeing the consultative examiners as he has a history of head injury. (AR 60–61.) He testified he has experienced memory problems for the past 11 years. (AR 58–61.)

**2. VE's Testimony**

The ALJ asked the VE to consider a person of Plaintiff's age and education and work history. (AR 65.) The VE was also to assume this person could perform light work with the following additional limitations: they could not engage in any climbing of ladders, ropes, or scaffolding; they could frequently climb ramps and stairs; they could frequently balance stoop, kneel, crouch, and crawl; and they should avoid work at heights and around dangerous machinery. (AR 65.) The VE

testified that such a person could not perform Plaintiff's past work but could perform light exertional jobs in the national economy such as sales attendant, Dictionary of Operational Titles (DOT) code 299.677-010, with a specific vocational preparation (SVP)[4] of 2; parking lot attendant, DOT code 311.677-010, with an SVP of 2; and routing clerk, DOT code 222.687-022, with an SVP of 2. (AR 65–66.)

According to the VE, none of the jobs identified would allow for the use of an assisted device or cane for long term ambulation. (AR 66.) The VE further testified that there would be no work for someone who is off task 15 to 20 percent of the workday. (AR 66.)

**C. The ALJ's Decision**

In a decision dated June 18, 2024, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–35.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 20–35.) The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2023, and he had not engaged in substantial gainful activity since June 1, 2018, the alleged onset date (step one). (AR 20.) At step two, the ALJ found Plaintiff's following impairments to be severe: history of lumbar radiculopathy; hernia; cervical degenerative disc disease; and history of thoracic compression fracture. (AR 20–23.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 23–24.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except [Plaintiff] cannot engage in any climbing of ladders, ropes, or scaffolding; he could frequently climb ramps and stairs, frequently balance, stoop, kneel, crouch, and crawl. [Plaintiff] should avoid work at heights and around dangerous machinery.

(AR 25–33.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 29.)

The ALJ determined that Plaintiff had could not perform his past relevant work (step four) but that, given his RFC, he could perform a significant number of jobs in the national economy, specifically sales attendant, parking lot attendant, and routing clerk (step five). (AR 33–34.) The ALJ concluded Plaintiff was not disabled from June 1, 2018, through the date of the decision. (AR 35.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 9, 2025. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*

*Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ committed harmful error in four ways: by not finding Plaintiff's traumatic brain injury and other mental impairments "severe" at step two; by not appropriately considering the opinion of consultative medical examiner Dr. Surineni; by improperly discounting Plaintiff's subjective symptom complaints; and by "ignoring" the third-party statements of Mr. Strawn and Mr. Harris. (*See* Docs. 13, 20.) The Court addresses Plaintiff's contentions below and finds that reversal is not warranted.[6]

---

[6] Plaintiff contends that the ALJ's adjudication of the period from June 1, 2018, to the date of the decision constituted a "de facto reopening" of prior claims covering that same period. (Doc. 13 at 7–8.) The Commissioner does not address, and therefore does not contest, Plaintiff's argument in this regard.

**A. The ALJ Did Not Commit Harmful Error at Step Two**

**1. Legal Standard**

"In step two of the disability determination, an ALJ must determine whether the [plaintiff] has a medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). A plaintiff has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

In the Ninth Circuit, step two of the disability inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. Thus, "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb*, 433 F.3d at 687 (citing Social Security Ruling 85–28). Moreover, once the ALJ finds the plaintiff has at least one severe impairment at step two, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Thus, if step two is resolved in the plaintiff's favor, any error is harmless so long at the ALJ considered limitations from all the plaintiff's impairments when formulating the RFC. *See Peebles v. Saul*, 827 F. App'x 727, 729 (9th Cir. 2020) (citing *Buck*, 869 F. 3d at 1048–49).

**2. Analysis**

After specifying Plaintiff's severe impairments at step two, the ALJ determined that Plaintiff's history of traumatic brain injury (TBI) and mental impairments were not severe. (AR 21.)

Regarding the former, the ALJ explained that neither "testing performed in 2013" nor the "three consultative examinations" showed findings consistent with a history of traumatic brain injury. (AR 21.)

The records cited (*see* AR 21) support the ALJ's conclusion. They indicate that Plaintiff's "overall intellectual ability tested in the mild deficit range" in 2013 (AR 1804), and the physical (AR 1665–70) and psychological (AR 743–50, 1658–64) consultative examinations conducted during the relevant period lacked any evidence of a history of traumatic brain injury. In fact, all three consultative examinations documented Plaintiff's ability to perform his daily self-care, shop, prepare meals, and do light chores. (AR 744, 1659, 1666.) And while the psychological examinations indicated low scores on WAIS-IV testing, both examiners indicated such scores should be "interpreted with caution," deeming them a "poor representation of [Plaintiff's] psychological functioning" and "grossly underestimated due to lack of effort." (AR 745, 749, 1660, 1663.)

In determining Plaintiff's mental impairments of "major depressive disorder, history of neurocognitive disorder, and alcohol dependence" were not severe, the ALJ cited evidence (*see* AR 21) of normal mental status examinations (AR 484, 624, 628, 1014, 1042), good response to medications (AR 600–601, 940, 948–85), performance of activities of daily living independently (AR 601, 1039), and self-reports of improved symptoms (AR 940, 1039). The ALJ also analyzed the rating of degree of limitation in each of the four "paragraph B" functional areas and concluded, based on the foregoing evidence and the results of the two psychological consultative examinations, that Plaintiff's mental impairments caused "no more than 'mild' limitation" in any of the areas.[7] (AR 22–23.) On this record, the ALJ reasonably determined that Plaintiff's mental impairments were not severe. *See Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) (substantial evidence supports an ALJ's finding that a plaintiff's mental impairments are non-severe if they properly consider the plaintiff's mental health records and the paragraph B findings and the record supports their findings regarding the non-severity).

---

[7] The paragraph B criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a plaintiff has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id*.

Plaintiff does not dispute this evidence in the record. He instead advocates for an alternative interpretation to refute the ALJ's nonseverity determination. (*See* Doc. 13 at 8–12, 14–16; Doc. 20 at 5–6.) But even if the record evidence could be construed more favorably to Plaintiff, the Court may neither reweigh it nor substitute its judgment for that of the Commissioner and will not disturb the ALJ's finding on this basis. *See Robbins*, 466 F.3d at 882; *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").

Accordingly, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's TBI and mental impairments of major depressive disorder, history of neurocognitive disorder, and alcohol dependence did not have more than a minimal effect on his ability to work. Therefore, the ALJ did not err by finding those impairments not severe at step two.

**3. Harmless Error**

Even if the ALJ had erred in concluding these impairments were not severe, however, such error was at most harmless. Contrary to Plaintiff's assertion that "[r]arely can step-two omissions be harmless error" (Doc. 13 at 11), a claimant is prejudiced at step two by an ALJ's omission of an impairment ***only*** where that step is not resolved in the claimant's favor. *See Burch*, 400 F.3d at 682; *see also Hickman v. Comm'r*, 399 F. App'x 300, 302 (9th Cir. 2010) ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe impairments at step two of the analysis is harmless. The ALJ found Hickman suffered from other severe impairments and, thus, step two was already resolved in Hickman's favor."). Additionally, the failure to include an impairment in the step two analysis is harmless if the ALJ considers the functional limitations that flow from that impairment in subsequent steps. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four); *see also Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

Step two was resolved in Plaintiff's favor when the ALJ determined Plaintiff had certain severe impairments and proceeded to the step three analysis. (AR 23–24.) It follows that, since Plaintiff's claims were not screened out at this step, he was not prejudiced by any error in the step two analysis. *Buck*, 869 F.3d at 1049 ("[S]tep two was decided in Buck's favor after both hearings. He could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand.").

Furthermore, the ALJ proceeded to state that in making their RFC finding they "considered all medically determinable impairments, including those that are not severe." (AR 23; *see, e.g., Sara Ann W. v. Comm'r of Soc. Sec.*, No. 2:17-CV-00277-RHW, 2018 WL 4088771, at *4 (E.D. Wash. Aug. 27, 2018) ("[T]he ALJ specifically noted that she considered all symptoms in assessing the residual functional capacity. Accordingly, the Court finds the ALJ did not err in the step two analysis, and if any error did occur it was harmless.").). The decision makes clear that in assessing the RFC, the ALJ considered Plaintiff's depression (AR 25, 31), alcohol use (AR 26, 32), and TBI/ neurocognitive disorder[8] (AR 31–32), including a lengthy discussion of the opinions of the State agency psychological consultants and the mental consultative examiners (none of which are challenged by Plaintiff) and the WAIS-IV testing results. *See Lewis*, 498 F.3d at 911 (finding that ALJ's error in not including bursitis as a severe impairment at step two was harmless in light of further analysis of that condition in the RFC).

The Court therefore finds no harmful error at step two.

**B. The ALJ's Treatment of Dr. Surineni's Opinion Was Not Erroneous**

**1. Legal Standard**

An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source" and "explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)); *see also* 20 C.F.R. § 416.920c(b). The Social Security Administration's regulations provide that the most important

[8] These are "the same impairment," according to Plaintiff. (Doc. 13 at 14 n.13.)

factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant... objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). Consistency refers to "the extent to which a medical opinion is 'consistent...with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2).

*Woods* makes clear that to reject properly a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. (quoting 20 C.F.R. § 404.1520c(b)); *see also* 20 C.F.R. § 416.920c(b).

**2. Analysis**

With these legal standards in mind, the Court reviews the ALJ's consideration of the medical opinion of consultative medical examiner Dr. Surineni. As pertinent here, Dr. Surineni opined that Plaintiff could stand and/or walk for up to two hours per day. (AR 1669.) The ALJ determined that the opinion was "not entirely persuasive" because the standing and walking limitations are "not supported by the examination" and the opinion is "not consistent with the treatment notes." (AR 30.)

Regarding supportability, the ALJ noted that Dr. Surineni's examination showed Plaintiff "did not ambulate with an assistive device, could ascend the examination table unassisted, and his hip, knees, and ankle strength were measured at 4/5 bilaterally, no swelling or tenderness were noted, and range of motion was within normal limits." (AR 30.) A lack of support by Dr. Surineni's own objective findings, substantiated by the record (*see* AR 1667–68), was a proper consideration in evaluating the supportability of the opined standing and walking limitations. *See, e.g., Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (finding unpersuasive a physician's opinion that was unsupported by his noted observations).

As to consistency, the ALJ found Dr. Surineni's opinion inconsistent with the treatment records. (AR 30.) Substantial evidence supports this finding. The ALJ observed that treatment

notes showed that Plaintiff "walked regularly" (AR 30 (citing AR 696, 711)), his "EKG and stress test were normal" (AR 30 (citing AR 698, 712–713)), and his "strength was consistently measured at 5/5 throughout" (AR 30 (citing 561–62, 730–31, 767–68, 1158).)

Plaintiff asserts that the ALJ engaged in "impermissible decisional doctor playing" in evaluating the persuasiveness of Dr. Surineni's opinion. (Doc. 13 at 17–18; Doc. 20 at 2–3.) The Court disagrees. ALJs are capable of independently reviewing and forming conclusions about medical evidence to determine whether a claimant is disabled and cannot work, as required by statute. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct [residual functional capacity]."). The ALJ here was entitled to review and interpret Dr. Surineni's examination and the treatment notes—none of which entailed raw medical data that would necessitate medical expertise. *See Matts v. Comm'r of Soc. Sec.*, No. 2:25-CV-01421-CSK, 2026 WL 2057095, at *8 (E.D. Cal. July 16, 2026) (rejecting the plaintiff's "playing doctor" argument, noting that "[t]he ALJ is empowered by regulations to assess the supportability and consistency with the administrative record of medical opinion testimony." (citing 20 C.F.R. § 416.920c(c)(1)–(2)); *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."); *cf. Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside record to consult medical textbooks for purpose of making their own assessment of the claimant's physical condition).

The true gravamen of Plaintiff's challenge to the treatment of Dr. Surineni's opinion appears to be the ***conclusion*** the ALJ drew from this evidence. (*See* Doc. 13 at 17–18; Doc. 20 at 2–3.) Plaintiff may disagree with this conclusion, but as has been seen, the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1196; *Thomas*, 278 F.3d at 954. Thus, the ALJ did not err by finding Dr. Surineni's opinion unpersuasive.

**C. The ALJ Properly Found Plaintiff Less Than Fully Credible**

**1. Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that [their] impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[9] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d

[9] The Court rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 17 at 5 n.2.)

1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2. Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 29.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the Court finds that the two reasons articulated by the ALJ for discrediting Plaintiff's subjective symptom allegations are clear and convincing and supported by substantial evidence, as explained below.

a. <u>Improvement with treatment</u>

First, the ALJ found Plaintiff's allegation of disability due to chronic body pain was "inconsistent with the record" showing his condition improved with treatment, resulting in a lack of reports of significant pain to his providers after May 2023. (AR 25–26, 29, 33 (citing AR 560, 1039–42, 1681).) In evaluating a claimant's alleged symptoms, an ALJ may find a plaintiff less credible when their symptoms can be controlled by treatment and/or medication. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (the ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment); *Hernandez v. Kijakazi*, No. 1:20-CV-01565-SKO, 2022 WL 4357967, at *6 (E.D. Cal. Sept. 20, 2022) (citing 20 C.F.R. § 416.929(c)(3)(iv)–(v) and *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for [disability] benefits.")).

Plaintiff does not dispute that he experienced improvement of his symptoms during the relevant period and that after May 2023 he did not complain of significant pain. He asserts instead that "nowhere in those pages of record recitation does the decision identify anything it is saying as contradicting any of Mr. Ramirez's allegations." (Doc. 13 at 19–20.) However, the Ninth Circuit has held that its "cases do not require ALJs to perform a line-by-line exegesis of the claimant's

testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Nevertheless, the ALJ here did not merely provide a summary of the medical evidence, as Plaintiff suggests.

The ALJ detailed Plaintiff's allegations of headaches, history of falls, difficulty sitting, worsening back pain, radiating neck pain, and foot and ankle pain (AR 25–26), and contrasted that testimony with opposing evidence from the medical record documenting improvement with treatment (AR 29, 33). The identification of specific allegations and the medical evidence that undermines those allegations permits the Court to review the ALJ's reasoning. Plaintiff's argument is therefore unavailing.[10] *See Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) (rejecting the plaintiff's argument that "the ALJ legally erred by failing to clearly identify which portions of his symptom testimony she rejected and failing to link her rejection of that testimony to the record evidence," where the ALJ "sufficiently explained her reasons for discounting [the plaintiff's] symptom testimony, and we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022)); *Young v. Saul*, 845 F. App'x 518, 519–20 (9th Cir. 2021) ("The ALJ specifically cited Young's written statements and testimony as among the items he had "carefully consider[ed]," and he gave specific reasons why he did not credit Young's claims concerning the 'limiting effects' of Young's symptoms . . . . The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony."); *Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D. Cal. May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving specific findings, followed a conventional organization for ALJ decision writing which is sufficiently clear for judicial review); *Razaqi v. Kijakaz*i, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence

[10] Plaintiff also accuses the ALJ of "violently offend[ing]" the rule articulated in *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017), which criticized the rejection of a claimant's testimony "to the extent that testimony was inconsistent with the above RFC." (Doc. 13 at 20.) That is not what the ALJ did here, however. Rather, the ALJ determined that Plaintiff's subjective pain testimony was "inconsistent with the ***record,***" not with the RFC itself (AR 29 (emphasis added)). *See Rossiter v. Berryhill*, No. 1:17-CV-00432-SB, 2018 WL 1041172, at *7 (D. Or. Feb. 2, 2018) (finding the plaintiff's reliance on *Laborin* "misplaced" where the ALJ "explicitly relied on the objective medical evidence as a factor in her credibility analysis" and "never discounted [the p]laintiff's testimony on the ground that it was inconsistent with the RFC.").

with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity. No inferential leaps are required to find the ALJ's reasoning clear and convincing.").

b. Activities of daily living

The ALJ did not predicate their credibility determination on the objective medical evidence alone, however. The ALJ also decided based on specific, clear, and convincing evidence that Plaintiff's allegation of disability due to chronic pain was inconsistent with his admitted activities of daily living. (AR 29.) A claimant's level of activity may support an ALJ's determination to give less weight to their subjective statements. When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan*, 169 F.3d at 600 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The Ninth Circuit also determined that a claimant's activities may be used to support an adverse credibility determination where the capabilities contradict the severity of the symptoms reported. *See, e.g., Valentine*, 574 F.3d at 693; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Thus, the Ninth Circuit determined a claimant's level of activity can form the basis for an ALJ to discount subjective statements where: (1) the activities contradict a claimant's testimony, or (2) the level of activity "meet[s] the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, as identified by the ALJ, Plaintiff reported during the relevant period that he was able to tend to his personal care, go out alone, drive, live with roommates, do light chores around the house, and walk up to one mile. (AR 29 (citing AR 333, 1666.) The ALJ reasonably concluded that these activities undermined Plaintiff's allegations of debilitating impairments due to pain (AR 25–26). *See Ahearn v. Saul,* 988 F.3d 1111, 1117 (9th Cir. 2021) (the plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas*, 278 F.3d at 959 (affirming ALJ's decision discounting the claimant's testimony after finding that the

claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping").

Although Plaintiff does not dispute these activities, he again criticizes the ALJ for not specifying how they are inconsistent with his testimony. (Doc. 13 at 20–21; Doc. 20 at 8.) The Court disagrees that any greater level of specificity is warranted in this case. It can be reasonably inferred that Plaintiff's consistent performance of a wide variety of daily activities undermined his subjective complaints, which the ALJ identified as headaches, history of falls, difficulty sitting, worsening back pain, radiating neck pain, and foot and ankle pain (AR 29, 30). *See Molina*, 674 F.3d at 1111 (ALJ's findings must be upheld e if they are "supported by inferences reasonably drawn from the record."). *See also Kaufmann*, 32 F.4th at 851–52 ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."). Given the inconsistency between Plaintiff's daily activities and his allegations of disabling pain, the Court finds that the ALJ's analysis of Plaintiff's subjective statements and testimony is supported by proper legal analysis and substantial evidence.

In sum, the Court concludes that the ALJ provided at least two clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding his disabling pain allegations.

**D. The ALJ Did Not Harmfully Err in Their Treatment of the Third-Party Statements**

The ALJ considered the statements of Mr. Strawn and Mr. Harris as set forth in their respective third-party adult function reports yet concluded that because they are "evidence from a nonmedical source" the ALJ "need not articulate how this evidence was considered in terms of persuasiveness." (AR 32 (citing 20 C.F.R. §§ 404.1520c and 416.920c).) Plaintiff asserts that the ALJ was required to evaluate these statements. (Doc. 13 at 22–25; Doc. 20 at 8–11.)

The Ninth Circuit has not yet addressed in a published decision whether the 2017 regulations, and specifically 20 C.F.R. §§ 404.1520c(d) and 416.920c(d), have eliminated the "germane reasons"

standard for evaluating lay witness testimony. It briefly appeared the issue had been definitively decided. *In Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. 2025), the Ninth Circuit addressed this issue and concluded: "Thus, our 'germane reasons' precedent no longer applies to claims filed on or after March 27, 2017, and in considering such claims, ALJs need not explain their reasons for discounting evidence from nonmedical sources, such as the claimant's friends and family." However, in response to a petition for rehearing and rehearing *en banc*, the opinion was withdrawn and replaced with an unpublished memorandum disposition. *See Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101 (9th Cir. May 13, 2025). This subsequent unpublished decision left the issue undecided and found that any error in failing to provide germane reasons was harmless error. *Id*. at *3.

Here, the ALJ did not ignore Mr. Strawn's and Mr. Harris' third party adult function reports. The ALJ summarized these statements, noting that they "can generally be helpful in making findings regarding the claimant's ability to complete activities of daily living; maintain, concentration, attention, and pace; engage in social activities; adapt and manage oneself, and function in general." (AR 32.) There was no harmful error in the ALJ not providing further articulation, or germane reasons, regarding these third-party function reports because they are substantially similar to Plaintiff's adult function reports, having been prepared in the same month and largely mirroring Plaintiff's own statements about his subjective symptomology (*compare* AR 319–26 *with* AR 331–38 and AR 374–81 *with* AR 366–73), and as discussed *supra*, the ALJ appropriately discounted Plaintiff's subjective symptom allegations. *See Hudnall*, 2025 WL 1379101 at *3 ("Where the ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations. Because Hudnall's wife's lay witness testimony was substantially similar to evidence that the ALJ appropriately rejected, the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination.") (citing *Molina*, 674 F.3d at 1121, 1222) (internal quotations omitted); *see also Gentry v. Comm'r of Soc. Sec*., No. 2:25-CV-01411-SCR, 2026 WL 2641831, at *7–8 (E.D. Cal. Sept. 8, 2026) (discussing *Hudnall* and finding no harmful error in the ALJ's failure to provide

germane reasons to discount a third party function report where it was similar to the plaintiff's appropriately discounted subjective symptom allegations); *Valladares v. Comm'r of Soc. Sec.*, No. 1:21-CV-01156-CDB (SS), 2026 WL 1481532, at *12–13 (E.D. Cal. May 27, 2026) (same).

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence in the record and free from legal error and is therefore AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Aldo Ramirez.

IT IS SO ORDERED.

Dated: **September 16, 2026**

**/s/** *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE